UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No. DK 11-05665
DONALD C. SMITH and                          Hon. Scott W. Dales
MARY T. BLOCHBERGER,                         Chapter 7

            Debtors.
_____/

OPINION AND ORDER REGARDING MOTION TO SET ASIDE DISCHARGE

PRESENT:    HONORABLE SCOTT W. DALES
                United States Bankruptcy Judge

## I.  INTRODUCTION

Chapter 7 Debtors Donald C. Smith and Mary T. Blochberger (the "Debtors") move for an order setting aside their discharge so that they may negotiate, sign, and file a reaffirmation agreement regarding their residential mortgage loan.  On February 29, 2012, the court held a hearing in Kalamazoo, Michigan, to consider the request, and took the matter under advisement. For the following reasons, the court will not set aside the Debtors' discharge.

## II.  JURISDICTION

The court has jurisdiction over the Debtors' bankruptcy case pursuant to 28 U.S.C. § 1334.  The United States District Court has referred the case and related proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and L.Civ.R. 83.2(a) (W.D. Mich.).  The entry of a discharge order is a core proceeding under 28 U.S.C. § 157(b)(2)(O), and a request to set aside such an order is also a core proceeding.

## III.  FACTS

The Debtors filed a voluntary petition for relief under Chapter 7 on May 19, 2011.  They have not filed any reaffirmation agreements, and they took no steps to delay the entry of

discharge or extend the time to file a reaffirmation agreement. *See* Fed. R. Bankr. P. 4004(c)(2) and 4008(a). On October 21, 2011, after expiration of the periods prescribed in Fed. R. Bankr. P. 1017(e) and 4004(a), the court entered a discharge order (the "Discharge," DN 21). Four months later, the Debtors filed a motion to set aside the discharge (the "Motion," DN 24) in order to pursue a reaffirmation agreement with their home mortgage lender, CitiMortgage (the "Lender"). According to the Motion, the Lender holds a mortgage on the Debtors' home to secure a promissory note that Mr. Smith and his father signed prepetition. *See* Motion at ¶ 4.

At no time did the Lender seek reaffirmation of its claim by sending the Debtors a reaffirmation agreement. *Id.* at ¶ 6. Nor did the Debtors ask the Lender to provide such an agreement, though their statement of intention filed pursuant to 11 U.S.C. § 521(a)(2) indicated their intent to reaffirm. According to the Motion, when they filed their petition, the Debtors planned to retain their residence and make payments, but they did not take any steps to do so, apparently relying on the Lender to initiate the process. Motion at ¶¶ 4-6.

At some point after entry of the Discharge, and presumably because the Discharge prevents the Lender from taking steps to collect the home mortgage debt as a personal obligation, 11 U.S.C. § 524(a), the Lender announced that it will no longer provide billing statements to the Debtors, will no longer report to the credit reporting agencies any payments it receives from the Debtors, and will exercise its right to foreclose on the Debtors' home if they miss a single payment. *See* Motion at ¶ 7. The Motion also asserts that Mr. Smith's father, a co-obligor, will suffer "irreparabl[e]" harm to his good credit if the Lender elects to foreclose. *Id.*

As their counsel explained during oral argument, the Debtors are uncomfortable living with the threat of foreclosure, and without the grace periods or other protection and certainty that a reaffirmation agreement would provide. To redress the problem, they ask the court to set aside their Discharge.

## IV.  ANALYSIS

The Motion does not cite any specific statute, rule, or case law on which this court could rely in setting aside the Discharge, but instead seems to assert "good cause."  *See* Proposed Order (Attachment to Motion).   Setting aside the Discharge, however, implicates a number of Bankruptcy Code provisions, rules, and policies which the court will briefly canvass in explaining its decision to deny the Motion.

By seeking to set aside the Discharge as a prelude to negotiating a reaffirmation agreement with the Lender, the Motion implicitly acknowledges that, in order to be enforceable, a reaffirmation agreement must, among other requirements, be "made before the granting of the discharge under section 727."  *See* 11 U.S.C. § 524(c)(1).[1]  Because any reaffirmation agreement reached at this point would not be enforceable under a plain reading of the statute, the Debtors propose to cure this statutory problem by setting aside their Discharge.  On their theory, vacating or revoking the Discharge would permit them to file a timely, and therefore enforceable, reaffirmation agreement.  Presumably, the Debtors would later ask the court to enter a new discharge, after they file their reaffirmation agreement.

Setting aside the Discharge, however, would undermine the Congressional design, expressed in 11 U.S.C. § 524 and elsewhere, to require interested parties and the courts, where invited, to consider reaffirmation agreement issues early in the case.  11 U.S.C. § 524(c)(1).  By insisting that a reaffirmation agreement be made before discharge and by setting filing deadlines early in the case, Congress intended to insulate debtors from post-discharge pressure to bargain away their fresh start. In addition to the requirement that the agreement be "made" before

---

[1] There is no indication in the record that the Debtors and the Lender have yet negotiated a reaffirmation agreement, let alone inked one, suggesting that the Motion may not be ripe.  To the extent that language within section 524(d) might be read as an exception to the requirement in section 524(c)(1) that a reaffirmation be "made" (or certainly negotiated) before discharge, that possible exception is inapplicable in this case because the Debtors are currently represented by counsel.  The court concedes that the meaning of section 524(d) is puzzling, but the text of the statute precludes its application to the Debtors under the circumstances presented.

discharge is granted as a condition of enforceability, Rule 4008 imposes a deadline early in the case for filing reaffirmation agreements -- a deadline that has already expired (though the court has discretion to extend it).  Fed. R. Bankr. P. 4008(a) and 9006(b)(3).

The enforceability of a reaffirmation agreement is not the only consequence related to the entry of a discharge.  For example, in a consumer Chapter 7 case such as the present, the entry of the discharge terminates the automatic stay in material respects.  11 U.S.C. § 362(c)(2)(C).  It is far from clear to the court that setting aside the discharge would re-impose the automatic stay, potentially leaving the Debtors without the protection that flows from the carefully dovetailed injunctive provisions of sections 362, 524, and 727.

In cases involving personal property (unlike the present matter), the failure to reaffirm a debt quickly may forfeit the protection of the automatic stay with respect to the related property and remove it from the bankruptcy estate altogether.  *See* 11 U.S.C. §§ 362(h) and 521(a)(6).

Moreover, entry of a discharge automatically voids judgments, such as the judgment against Mr. Smith that the Berrien County Circuit Court entered in *American Express Centurion Bank v. Smith*, Case No. 09013CZB.  *Id.* § 524(a).  The court is not suggesting that the Debtors in this case have any motives other than expressed by counsel, but, in general, setting aside bankruptcy discharges could create unintended effects and opportunities for mischief because bankruptcy discharges may affect other statutory schemes.  *See, e.g.*, M.C.L. § 600.2809(6)(d) (recording of discharge extinguishes judgment lien); *id.* § 600.2914 (cancellation of judgments of record); 26 U.S.C. § 108 (income from discharge of indebtedness).  As a practical matter, the discharge signals to creditors that they may no longer collect debts as a personal obligation of their debtors, likely prompting them to write-off the debts and remove them from their collection databases.  In short, interested parties rely on the court's discharge orders.

As noted above, the Debtors did not cite any authority in support of their Motion. The Bankruptcy Code does provide for revocation of the discharge, but the Debtors are not among the entities authorized to seek such relief, nor have they advanced the reasons prescribed in that statute for revocation. *See* 11 U.S.C. § 727(d).[2] Congress certainly contemplated revocation of discharges, but evidently not in the circumstances that confront the Debtors. So, it appears that even if Debtors had standing to bring the Motion, they have made no showing that would support a setting aside of discharge under section 727(d).

Similarly, the Debtors have not cited section 105(a) as a statutory basis for revoking their discharge, but the court would not be inclined to rely on that statute to limit section 524(c)(1) or expand section 727(d) in any event. As the Supreme Court has observed, a bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). The court may invoke section 105(a) to "carry out the provisions" of title 11, but not to countermand them. 11 U.S.C. § 105(a); *see also In re C-L Cartage Co., Inc.*, 899 F.2d 1490, 1494 (6th Cir. 1990).

Having exhausted the possible statutory grounds for the relief requested in the Motion, the court turns to the rules. Although the Debtors do not cite it, Rule 60 of the Federal Rules of Civil Procedure comes to mind because courts have sometimes considered motions to set aside discharges under that rule. *See In re Smith*, No. 11-35051, 2012 WL 441322 (Bankr. N.D. Ohio Feb. 10, 2012); *In re Stewart*, 355 B.R. 636 (Bankr. N.D. Ohio 2006); *In re Edwards*, 236 B.R. 124 (Bankr. D.N.H. 1999).[3]

---

[2] In particular, section 727(d) provides that a "trustee, a creditor, or the United States trustee" may request that the court revoke a discharge. The list of persons entitled to request such relief does not include the more inclusive term "party in interest" found elsewhere in the statute, which suggests that the Debtors may not have statutory standing to seek revocation of the discharge. Additionally, section 727(d) lists criteria for revocation, none of which apply.

[3] Rule 9024 of the Federal Rules of Bankruptcy Procedure makes Rule 60 of the Federal Rules of Civil Procedure applicable in bankruptcy.

Rule 60(a) applies when it is necessary to "correct mistakes or oversights that cause the judgment to fail to reflect what was intended . . ." *In re Walter*, 282 F.3d 434, 441 (6th Cir. 2002) (quoting *Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir. 1987)). Here, acting promptly as the court's rules require, and after the expiration of prescribed deadlines, the court properly entered the Discharge as intended. *See* Fed. R. Bankr. P. 4004(c) (directing the court to enter discharge "forthwith"). There is simply no clerical error to correct.

The role of Rule 60(b), however, is different. Under Rule 60(b)(1), on motion, a court may relieve a party from a "final judgment, order, or proceeding" due to "mistake, inadvertence, surprise, or excusable neglect." Nothing in the Motion suggests mistake, inadvertence, or surprise as the reason for not timely negotiating a reaffirmation agreement. The Debtors' Statement of Intention, which expresses their intent to reaffirm, undercuts surprise, and their supposed reliance on the Lender to start the process does not qualify as a mistake or inadvertence: they took no mistaken or inadvertent action, but simply neglected to act.

To the extent the Motion could be read to suggest excusable neglect in not seeking to file a reaffirmation agreement sooner, the court is not persuaded that the neglect is excusable. As the court has previously noted, debtors "may put the brakes on the discharge if they need more time to negotiate reaffirmation agreements." *In re Shiverdecker*, DG 08-06277, slip op. at 2 n.1 (Bankr. W.D. Mich. Jan. 15, 2009). Indeed, the court has developed a simple form for this purpose and authorized the Clerk to approve the deferral. *Id.; see also* LBR 4004-1. As the Supreme Court noted, "[i]f a party is partly to blame for the delay . . . the party's neglect must be excusable." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393 (1993). But, as the Supreme Court also observed, ignorance of court rules is generally not excusable. *Id.* at 392. So the fact that the Debtors have ignored this avenue for relief is not a ground to vacate the Discharge.

As for Rule 60(b)(2) through (b)(5), these subsections by their terms have no application to the Motion. And, because Rule 60(b)(1) appears to be squarely on point (though not satisfied), there is no need to consider the catch-all provision of Rule 60(b)(6). The Sixth Circuit has interpreted Rule 60(b)(6) as applicable only if clauses 1 through 5 do not apply, reserving the last subsection for extraordinary circumstances not presented here. *See Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). To the extent that Rule 9005 might permit the court to cure the Debtors' omission in negotiating a reaffirmation agreement before discharge, the court believes that the substantial rights and statutory provisions described above preclude a harmless error analysis.

Finally, although some courts have expressed a willingness to set aside the discharge under circumstances comparable to those described in the Debtors' Motion, the better-reasoned opinions, including Judge Whipple's decision last month, counsel against granting the Motion. *See In re Smith*, No. 11–35051, 2012 WL 441322 (Bankr. N.D. Ohio Feb. 10, 2012); *In re Stewart*, 355 B.R. 636 (Bankr. N.D. Ohio 2006); *but see In re Edwards*, 236 B.R. 124 (Bankr. D.N.H. 1999) (allowing a debtor to vacate a discharge order to enter into a reaffirmation agreement for his mobile home).

## V.  CONCLUSION AND ORDER

The court recognizes that Debtors may believe a reaffirmation agreement is in their best interest. However, the court does not find that circumstances warrant setting aside a discharge order that has been in place for over four months when the Motion has pointed to no statute, rule, or case law to support such an order. The Debtors' discomfort and anxiety are simply not good reasons to ignore federal statute, especially where the Debtors or Mr. Smith's father have at least three simple solutions to the problem: continue making the payments, refinance using the father's "good credit," or make a valid post-discharge agreement to avoid a foreclosure. *In re*

*Martin*, No. 11-8052, slip op. at 12 (6th Cir. BAP March 7, 2012) (citing *Minster State Bank v. Heirholzer (In re Heirholzer)*, 170 B.R. 938, 941 (Bankr. N.D. Ohio 1994)).  As a less formal alternative, perhaps the Debtors might persuade the Lender to send the notices to Mr. Smith's father, who is not a debtor in bankruptcy and is not protected by their Discharge.  11 U.S.C. § 524(e).

For the reasons set forth on the record during oral argument and in this Opinion and Order, the court will deny the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtors' Motion (DN 24) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Donald C. Smith; Mary T. Blochberger; Richard F. Ruby, Esq.; and CitiMortgage at the address listed in the Debtors' schedules or matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 8, 2012**



Scott W. Dales
United States Bankruptcy Judge